UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| COREY J. STRZYZEWSKI,<br><br>　　　　　　　　　Plaintiff,<br><br>　v.<br><br>DEWAYNE DEAL, *et al.*,<br><br>　　　　　　　　　Defendants. | 3:14-cv-00612-MMD-VPC<br><br>**REPORT AND RECOMMENDATION**<br>**OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants Deal, Moyle, Schreckengost, and Walsh's motion for summary judgment (ECF No. 23). Plaintiff Corey Strzyzewski ("plaintiff") did not oppose defendants' motion for summary judgment despite receiving two extensions of time to do so. (*See* ECF Nos. 29, 33.) Having thoroughly reviewed the record and papers, the court hereby recommends that the motion for summary judgment be granted.

**I.　FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff is formerly an inmate in the custody of the Nevada Department of Corrections ("NDOC"). At the time relevant to this action, plaintiff was incarcerated at Northern Nevada Correctional Center ("NNCC") in Carson City, Nevada and Ely State Prison ("ESP") in Ely, Nevada.

According to plaintiff's amended complaint, the events giving rise to his claims are as follows. On August 11, 2011, Kennedy conducted a disciplinary hearing against plaintiff for a violation of MJ-30.[1] (ECF No. 7 at 11.) Kennedy told plaintiff that if he pled guilty Kennedy

---

[1] Plaintiff was charged with engaging in sexually stimulating activities with another inmate. (*See* ECF No. 23-1.)

would order a sanction of ninety days in disciplinary detention followed by a post-disciplinary full classification hearing for plaintiff to enter general population. (*Id.*) If he did not plead guilty, Kennedy would order a sanction of two years in disciplinary detention; therefore, plaintiff pled guilty. (*Id.*)

Plaintiff submitted an inmate request to Carmazzi requesting that, after completing his ninety days of disciplinary segregation, he appear before a post-disciplinary full classification committee on October 25, 2011, as Kennedy ordered. (*Id.*) Carmazzi informed plaintiff that there would be no classification hearing and that she had recommended that plaintiff remain in administrative segregation due to a violation of Administrative Regulation ("AR") 610, which related to plaintiff being an "open known homosexual with HIV and . . . engaging in some kind of high risk sexual (sic) stimulating behavior that increase[d] the risk of transmitting his HIV . . . to other inmates." (*Id.* at 12.) Plaintiff did not have his hearing on October 25, 2011. (*Id.*)

On April 27, 2012, defendants Walsh and Moyle conducted plaintiff's full classification hearing. (*Id.* at 13.) They found that Carmazzi's findings had been "vague and lacked the specific physical/factual evidence that plaintiff had ever engaged in high risk sexual stimulating behavior that would increase the risk of transmitting HIV to another inmate." (*Id.*) The classification committee returned plaintiff to general population at NNCC. (*Id.*)

However, on November 5, 2012, defendants Walsh and Moyle reinstated plaintiff back to administrative segregation. (*Id.* at 13-14.) Plaintiff learned that defendants had received confidential, unsigned information that plaintiff had continued to engage in high risk sexually stimulating behavior and that, if left in general population, it would increase the risk of transmitting HIV to other inmates. (*Id.* at 14.) Plaintiff did not receive any disciplinary charges or due process hearing. (*Id.*)

On December 3, 2012, plaintiff wrote to defendant Walsh and asked her why he had been placed back into administrative segregation without any disciplinary charges or due process. (*Id.*) On December 28, 2012, defendant Walsh told plaintiff that Reed, Byrnes, and Bannister had ordered her to place him back into administrative segregation without any disciplinary charges or due process hearing. (*Id.* at 15.) She told plaintiff that Bannister was the only person who could

1   order him back into general population. (*Id.*) In January 2013, defendant Walsh told to plaintiff
2   that Reed, Byrnes, and Bannister had "tied her hands" and had overturned her April 27, 2012,
3   ruling. (*Id.*)

4   On January 10, 2013, plaintiff sent a kite to Reed, Byrnes, and Bannister about
5   overturning defendants Walsh and Moyle's April 2012 ruling. (*Id.*) On January 14, 2013, Reed
6   told plaintiff that his actions on July 25, 2011, had warranted his retention in administrative
7   segregation to protect plaintiff's HIV/homosexual status. (*Id.* at 16.) In response to plaintiff's
8   kite, defendant Moyle informed him that he was never supposed to have been released from
9   administrative segregation on April 27, 2012, and he was to remain locked up indefinitely and
10  permanently to protect the rest of the inmates from plaintiff's attempt to spread the HIV virus to
11  other non-HIV inmates. (*Id.* at 16-17.)

12  On January 23, 2013, plaintiff had a full classification due process hearing conducted by
13  defendants Walsh, Schreckengost, and Laura Irving who informed plaintiff that he was to remain
14  indefinitely in administrative segregation pursuant to Reed, Byrnes, and Bannister's orders. (*Id.*
15  at 17.) During that hearing, plaintiff was not permitted to speak or ask any questions. (*Id.*) The
16  classification committee told plaintiff that he would have another due process hearing on
17  February 22, 2013, but he did not. (*Id.*)

18  On May 13, 2013, plaintiff had another classification/due process hearing before
19  defendants Walsh, Moyle, and Irving. (*Id.* at 18.) Defendant Walsh spoke the entire time and
20  told plaintiff that she wanted him to sign a letter stating that he "would not be in any type of
21  enclosed environment with any other inmates at NNCC." (*Id.*) Defendant Walsh told plaintiff
22  that "Plaintiff being a known open homosexual with HIV would violate AR 610 and NRS statutes
23  . . . by engaging in high risk sexually stimulating behavior and could and [would] promote the
24  [transmission of] his HIV virus." (*Id.*) Defendant Walsh told plaintiff that there would be no due
25  process hearing of any kind with respect to any confidential information that passed across her
26  desk about plaintiff "acting funny or engaging in high risk sexual (sic) stimulating behavior"
27  around other inmates in general population. (*Id.*) Defendant Walsh told plaintiff that she would
28  submit the committee hearing's notes to Reed, Byrnes, and Bannister after plaintiff wrote the

3

letter. (*Id.*) She would let them decide if plaintiff should return to general population. (*Id.*) On May 24, 2013, plaintiff wrote his letter to defendant Walsh. (*Id.* at 19.) Plaintiff never heard anything more about returning to general population. (*Id.*)

Prison officials transferred plaintiff to ESP. (*Id.* at 21.) At ESP, plaintiff had one or two classification hearings. (*Id.* at 22.) The prison staff did not change plaintiff's status. (*Id.*) Plaintiff was denied due process, equal protection, and was retaliated against for challenging the lack of evidence to keep him locked up. (*Id.* at 23.)

Plaintiff filed a civil rights complaint regarding these allegations in state court, but the state court judge dismissed the case. (*Id.* at 28.) Plaintiff tried to appeal to the Nevada Supreme Court. (*Id.*) Plaintiff handed his appeal to John Doe to submit to the NNCC mailroom. (*Id.* at 29.) John Doe told plaintiff that, pursuant to defendant Irving's orders, John Doe had to roll plaintiff's property up and transfer him to ESP. (*Id.*) John Doe told plaintiff that his property would follow him to ESP and that he could mail his legal papers there. (*Id.*) After arriving at ESP, plaintiff did not receive his property for approximately eighteen to twenty days. (*Id.*) Plaintiff mailed his notice of appeal when he received his property. (*Id.*) Plaintiff later received an order from the Nevada Supreme Court informing him that his notice of appeal had been late. (*Id.* at 29, 31.)

On December 15, 2015, the District Court screened plaintiff's amended complaint, allowing the following claims to proceed: (1) in Count I a Fourteenth Amendment Due Process claim; (2) in Count II a Fourteenth Amendment Equal Protection claim; (3) in Count III a First Amendment Retaliation claim; and (4) in Count IV a First Amendment Access to Courts claim. (*See* ECF No. 10.) Additionally, defendant Romeo was dismissed because there were no allegations made against him in the complaint. (*See id.* at 11.) On September 29, 2016, defendants Reed, Byrnes, Bannister, Carmazzi, and Kennedy were dismissed pursuant to Fed. R. Civ. P. 4(m). (*See* ECF No. 34.)

As a preliminary matter, the court notes that plaintiff is proceeding *pro se*. "In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623

(9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, plaintiff has failed to oppose defendants' motion for summary judgment, despite receiving two extensions of time to do so. Local Rule 7-2(d) provides that the failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion.

Additionally, the court notes that the Count IV First Amendment Access to Courts claim is brought against defendants Laura Irving and John Doe. Defendant Irving has yet to be served in this matter and defendant Doe has yet to be named. Based on this, the court recommends that defendants Irving and Doe and the Count IV First Amendment Access to Courts claim be dismissed. *See* Fed. R. Civ. P. 4(m); Fed. R. Civ. P. 21. Finally, no allegations were made against defendant Deal in the complaint. (*See* ECF No. 7.) Based on this, the court recommends that defendant Deal be dismissed.

## II.   LEGAL STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

1  Summary judgment proceeds in burden-shifting steps.  A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts.  *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party.  *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).  "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . .  In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor."  *Id.* (citations omitted).  The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution.  *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324.  Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct.  *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

## III. DISCUSSION

### A. Civil Rights Claims Under § 1983

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes," *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under § 1983 require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official acting under the color of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

### B. Fourteenth Amendment – Due Process

Defendants argue that summary judgment should be granted in their favor as to the due process claim because some of plaintiff's claims fall outside the statute of limitations and the remaining due process claims are without merit. (ECF No. 23 at 7-9.)

42 U.S.C. § 1983 contains no statute of limitations, so federal courts apply the forum state's statute of limitations for personal injury claims to determine whether a complaint is timely filed. *Johnson v. State of California*, 207 F.3d 650, 653 (9th Cir. 2000). Therefore, in Nevada, the statute of limitations for section 1983 actions is two years. *See* Nev. Rev. Stat. § 11.190(4)(e); *Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989), *cert. denied*, 493 U.S. 860 (1989). Under the applicable statute of limitations, plaintiff had two years from the time of the alleged injury to commence the instant suit. *Id.* An action is deemed to be commenced when the complaint is filed. *Id.*

Plaintiff has two main due process claims. First, he contends that he was denied a post-disciplinary due process hearing on October 25, 2011, when he was transferred from disciplinary segregation to administrative segregation. (*See* ECF No. 7 at 11-13.) Second, he alleges he was

1  denied a due process hearing on November 5, 2012, when he was put back into administrative
2  segregation based on "confidential, unsigned information." (*Id.* at 13-15.) As to plaintiff's first
3  allegation, plaintiff knew or had reason to know of the injury on October 25, 2011 and as to the
4  second allegation, plaintiff knew or had reason to know of the injury on November 5, 2012. *See*
5  *Kimes*, *v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996). Plaintiff brought this action on November
6  24, 2014. (ECF No. 1-1.) Plaintiff was required to file suit regarding these claims by October 25,
7  2013 for the first allegation and by November 5, 2014 for the second allegation. Because plaintiff
8  has not raised the issue of equitable tolling, the court finds that plaintiff failed to file suit within
9  the applicable two-year statute of limitations and therefore recommend that the due process
10 claims be dismissed as untimely.

**C.  Fourteenth Amendment – Equal Protection**

"The Equal Protection Clause requires the State to treat all similarly situated people equally." *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "In the prison context, however, even fundamental rights such as the right to equal protection are judged by a standard of reasonableness—specifically, whether the actions of prison officials are 'reasonably related to legitimate penological reason.'" *Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Jordan v. Gardner*, 986 F.2d 1521, 1530 (9th Cir. 1993).

The preliminary inquiry in an equal protection claim is identifying the plaintiff's relevant class, which is "comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (internal quotation omitted). Then, "a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003). Because the claim requires proof of intentional discrimination, "[m]ere indifference" to the unequal effects on a particular class does not establish discriminatory intent. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005).

8

Plaintiff alleges that he was placed in administrative segregation because of his sexual orientation and HIV status. (ECF No. 7 at 12.) Defendants argue that plaintiff was held pursuant to AR 610, which allows for administrative segregation of HIV-positive inmates who engage in high risk behavior "for the welfare of the general inmate population, for the welfare of staff, and to reduce the opportunities for the disease to spread" (ECF Nos. 23 at 10, 23-3, 23-4.) and that "plaintiff cannot show that protecting HIV-negative inmates from potential exposure to HIV via admitted and consensual sexual conduct is not a legitimate penological goal." (ECF No. 23 at 10.)

Plaintiff, an HIV-positive individual, pled guilty to a charge of engaging in sexually stimulating activities and pursuant to AR 610, was placed in administrative segregation. Plaintiff fails to present any evidence in the record for which a jury could conclude that he was treated differently than other, similar situated inmates. Plaintiff also fails to present any evidence that defendants intentionally discriminated against him on the basis of his sexual orientation or HIV status. Additionally, defendants have shown that there is a legitimate penological reason to place HIV-positive inmates, who engage in high risk behavior, in administrative segregation. The record contains no basis for concluding that defendants violated plaintiff's equal protection rights, therefore, the court recommends that summary judgment be granted in favor of defendants. Because this court finds that plaintiff failed to allege an equal protection violation, it need not consider defendants' qualified immunity defense.

**D.     First Amendment – Retaliation**

Defendants argue that summary judgment should be granted in their favor as to the retaliation claim because it fails as a matter of law. (ECF No. 23 at 9-11.)

It is well established in the Ninth Circuit that prisoners may seek redress for retaliatory conduct by prison officials under § 1983. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). "Prisoners have a First Amendment right to file grievances against prison officials and be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). A retaliation claim has five elements: (1) a state actor took some adverse action against the inmate (2) because of (3) the

1  inmate's protected First Amendment conduct, and that the action (4) chilled the inmate's
2  exercise of his First Amendment rights and (5) did not reasonably advance a legitimate
3  correctional goal. *Rhodes*, 408 F.3d at 567–68. If the plaintiff fails to allege that the retaliation
4  had a chilling effect, he or she may still state a claim by alleging some other harm. *Id.* at 568
5  n.11.
6  Plaintiff alleges that defendants kept him in administrative segregation because he filed
7  grievances and lawsuits against them. (ECF No. 7 at 23.) The court must consider whether the
8  record, when viewed in the light most favorable to plaintiff, contains evidence from which a
9  reasonable jury could conclude that defendants performed the adverse action alleged because
10 plaintiff filed grievances. Defendants argue that it does not (ECF No. 23 at 9-11.), and the court
11 agrees.
12  As discussed above, plaintiff was placed in administrative segregation pursuant to AR
13 610. Plaintiff has not presented evidence to the contrary. Plaintiff's vague and conclusory
14 allegations cannot carry plaintiff's burden in opposing defendants' evidence at the summary
15 judgment stage. Accordingly, plaintiff has not shown that a material dispute exists as to whether
16 defendants performed the adverse action because plaintiff filed grievances, and summary
17 judgment in defendants' favor is proper.

### IV. CONCLUSION

19  For the reasons stated herein, the court finds that defendants are entitled to judgment as a
20 matter of law. Accordingly, the court recommends that defendants' motion for summary
21 judgment be granted.
22  The parties are advised:
23  1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of
24 Practice, the parties may file specific written objections to this Report and Recommendation
25 within fourteen days of receipt. These objections should be entitled "Objections to Magistrate
26 Judge's Report and Recommendation" and should be accompanied by points and authorities for
27 consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (ECF No. 23) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED**: November 16, 2016.

_____
**UNITED STATES MAGISTRATE JUDGE**